David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY PLANT, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>            v.<br><br>JAGUAR ANIMAL HEALTH, INC., JAMES J. BOCHNOWSKI, LISA CONTE, JIAHAO QIU, ZHI YANG, FOLKERT KAMPHUIS, JOHN MICEK III, and ARI AZHIR,<br><br>                    Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1.  **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>2.  **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Tony Plant ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is a class action brought by Plaintiff on behalf of himself and the other ordinary shareholders of Jaguar Animal Health, Inc. ("Jaguar" or the "Company"), except Defendants (defined below) and their affiliates, against Jaguar and the members Jaguar's board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and 17 C.F.R. § 229.1015(b)(4) in connection with the proposed merger between Jaguar and Napo Pharmaceuticals, Inc. ("Napo").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading joint proxy statement/prospectus/information statement (the "Proxy") to be filed with the SEC and disseminated to Jaguar shareholders. The Proxy recommends that Jaguar shareholders vote in favor of a Proposed Merger whereby Jaguar, in an all-stock transaction, will acquire Napo, with Jaguar continuing as the surviving entity (the "Proposed Merger"). Jaguar is expected to be renamed "Jaguar Health, Inc." and is referred to herein as the "Combined Company". Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), Jaguar will assume (i) each outstanding and unexercised option to purchase Napo common stock, which will be converted into options to purchase Jaguar common stock, (ii) each outstanding warrant to purchase Napo common stock, which will be converted into warrants to purchase Jaguar common stock, and (iii) each outstanding restricted stock unit to acquire Napo common stock, which will be converted into restricted stock units to acquire Jaguar common stock (the "Merger Consideration").  Jaguar stockholders before the Proposed Merger will experience dilution in the amount of approximately 75% as a result of the Proposed Merger.

3.      As discussed below, the Merger Consideration appears excessive, and the process by which Defendants consummated the Proposed Merger is fundamentally unfair to Plaintiff and

the other common shareholders of Jaguar.  Defendants have now asked Jaguar's shareholders to support the Proposed Merger based upon the materially incomplete and misleading representations and information contained in the Proxy, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      Specifically, the Proxy contains materially incomplete and misleading information concerning: (i) the terms and details surrounding any alternative indications of interest the Company received from other companies or any information regarding a formal sales or merger process; (ii) the financial projections for both Jaguar and Napo; (iii) the financial analyses performed by the Company's financial advisor, Stifel, Nicolaus & Company, Incorporated ("Stifel") in support of its fairness opinion; (iv) potential conflicts of interest Stifel faced as a result of its historical dealings with either party and (v) actual Merger Consideration.

5.      The special meeting of Jaguar shareholders to vote on the Proposed Merger is scheduled for July 27, 2017.  It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

6.      For these reasons as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Jaguar's shareholders or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act, SEC Rule 14a-9, and 17 C.F.R. § 229.1015(b)(4).

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

1   present in this District for jurisdictional purposes or has sufficient minimum contacts with this

2   District as to render the exercise of jurisdiction over defendant by this Court permissible under

3   traditional notions of fair play and substantial justice.

4        9.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C.

5   § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an

6   effect in this District; (ii) Jaguar maintains its principal place of business in this District and each

7   of the Individual Defendants, and Company officers or directors, either resides in this District or

8   has extensive contacts within this District; (iii) a substantial portion of the transactions and

9   wrongs complained of herein, occurred in this District; (iv) most of the relevant documents

10   pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in

11   this District; and (v) Defendants have received substantial compensation in this District by doing

12   business here and engaging in numerous activities that had an effect in this District.

13   <center>**PARTIES**</center>

14

15        10.    Plaintiff is, and has been at all relevant times, the owner of Jaguar common stock

16   and held such stock since prior to the wrongs complained of herein.

17        11.    Defendant Jaguar is a Delaware Corporation with its principle executive offices

18   located at 201 Mission Street, Suite 2375 San Francisco, CA 94105.  Jaguar is an animal health

19   company focused on developing and commercializing first-in-class gastrointestinal products for

20   companion and production animals, foals, and high value horses.  Jaguar's common stock trades

21   on the NASDAQ under the symbol "JAGX".

22        12.    Individual Defendant James J. Bochnowski is a director of Jaguar and is the

23   Chairman of the Board.

24        13.    Individual Defendant Lisa Conte is a director of Jaguar and is the founder and

25   Chief Executive Officer of the Company.

26        14.    Individual Defendant Bernard M. Goldsmith is, and has been at all relevant times,

27   a director of the Company.

28

<center>4</center>

15.     Individual Defendant Jiahao Qiu is, and has been at all relevant times, a director of the Company.

16.     Individual Defendant Zhi Yang is, and has been at all relevant times, a director of the Company.

17.     Individual Defendant Folkert Kamphuis is, and has been at all relevant times, a director of the Company.

18.     Individual Defendant John Micek III is, and has been at all relevant times, a director of the Company.

19.     Individual Defendant Ari Azhir is, and has been at all relevant times, a director of the Company.

20.     The defendants identified in paragraphs 11-19 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Jaguar common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

22.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of June 30, 2017, Jaguar had approximately 17.38 million shares outstanding.

(b)     The holders of these shares are believed to be geographically dispersed through the United States;

(c)     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

i. Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

ii. Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated.

(d)    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(e)    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(f)    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(g)    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

A.    **The Proposed Merger Undervalues Jaguar and is the Result of a Severely Flawed Merger Process.**

23.    In June 2013 Napo created Jaguar as a wholly owned subsidiary to develop and commercialize animal health products. Jaguar remained a majority-owned subsidiary of Napo until Jaguar's initial public offering in December 2015. However, to this day both companies share a headquarters at 201 Mission Street, Suite 2375 San Francisco, CA 94105.

24.    Jaguar is an animal health company focused on developing and commercializing gastrointestinal products for companion and production animals, foals, and horses. Canalevia is

6

its prescription drug product candidate, intended for treatment of various forms of diarrhea in dogs. Canalevia is a canine-specific formulation of crofelemer, an active pharmaceutical ingredient (API) isolated and purified from the Croton lechleri tree. The Company is developing a pipeline of prescription drug product candidates and non-prescription (non-drug) products to address needs in animal health. As of December 31, 2016, the Company's pipeline includes prescription drug product candidates for nine indications across multiple species, and non-prescription products targeting seven species. The Company's product candidates include Canalevia, Species-specific formulations of crofelemer, Equilevia, Virend (topical), Species-specific formulations of NP-500, Neonorm Calf and Species-specific formulations of Neonorm.

25.     The Merger Consideration undervalues Jaguar, and is the result of a severely flawed merger process, in which the Board made no effort to merge the Company with any party except Napo.

26.     The Proxy makes no reference to any bids, parties, offers, negotiations, or discussions to merge with any company except for Napo. The Proxy briefly mentions that in the second half of 2015 members of the Board met with a few financial institutions to discuss "opportunities for Jaguar to find suitable partners **or evaluate the potential of a merger with Napo**." That is less than a sentence total in the 600+ page Proxy refencing even the idea of merging Jaguar with any entity besides Napo.

27.     In early April 2016, the Board decided to engage Stifel for the sole purpose of evaluating the merger with Napo, marking the conclusive denial to orchestrate any formal sales or merger process.  The failure to even attempt to gauge the market value for Jaguar, coupled with the flawed negotiation process with Napo, significantly cost Jaguar shareholders.

28.     Once negotiations began with Napo, the Board negotiated for the procession of the deal, the vesting of their restricted stock units, and to protect their lofty boardroom seats, not to increase shareholder value. After initially offering a merger of equals, the Board ultimately agreed to a 3-to-1 contribution ratio in favor of Napo, and to clear Napo's debt by offering Napo debt holders Jaguar equity. In exchange, the Jaguar Board will maintain all of the board seats in the Combined Company.

CLASS ACTION COMPLAINT

29.     Additionally, members of the Jaguar Board own approximately 10% of Napo. This creates an entire set of interests apart from the shareholders generally. If Napo gets the better deal in the merger, the Jaguar Board still gets compensated. Conte holds restricted stock units (RSUs) for an aggregate of 10,474,783 shares of Napo common stock (3,475,734 of which were issued prior to 2011; and 6,999,049 of which were issued in 2011 or later), and King holds RSUs for an aggregate of 2,042,098 shares of Napo common stock (1,073,273 of which were issued prior to 2011; and 968,825 of which were issued in 2011 or later). The RSUs issued prior to 2011 will vest upon a consummation of the Proposed Merger. The RSUs issued prior to 2011 will only vest upon consummation of the Proposed Merger and the repayment of Napo's debt. It does not appear to be a coincidence that the repayment of Napo debt was such an important part of the Merger Consideration.

30.     Since the announcement of the deal on March 31,2017, the stock price has severely dropped losing nearly half its value, as reflected in the chart below:



31.     This is a strong indication that the market believes that the Merger Consideration inadequately values Jaguar.

CLASS ACTION COMPLAINT

32.     Despite the excessive Merger Consideration, the Board has agreed to the Proposed Merger.  It is therefore imperative that Jaguar's shareholders are provided with the material information that has been omitted from the Proxy, so that they can meaningfully assess whether the Proposed Merger is in their bests interests prior to the forthcoming shareholder vote.

**B.     The Proxy Is Materially Incomplete and Misleading.**

33.     On July 6, 2017, Jaguar filed the definitive Proxy with the SEC in connection with the Proposed Merger.   The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

34.     First, the Proxy fails to provide unlevered free cash flow projections[1] for both Jaguar and Napo. These unlevered free cash flows were utilized by Stifel in their valuation calculations, and are material to the Company's shareholders. Indeed, investors are concerned, perhaps above all else, with the unlevered free cash flows of the companies in which they invest. Under sound corporate finance theory, the value of stock should be premised on the expected unlevered free cash flows of the corporation. Accordingly, the question that the Company's shareholders need to assess in determining whether to vote in favor of the merger is clear – is the Merger Consideration fair compensation given the expected unlevered free cash flows?  Without unlevered free cash flow projections, the Company's shareholders will not be able to answer this question and assess the fairness of the Merger Consideration.

---

[1] Unlevered free cash flows are used to determine a company's enterprise value. The unlevered free cash flow allows investors to ascertain the operating value of a company independent of its capital structure. This provides a greater degree of analytical flexibility and allows for a clearer picture of the value of the company overall. For this reason, unlevered free cash flows are routinely used to value a company, especially in merger contexts.

CLASS ACTION COMPLAINT

35. Additionally, the Proxy references projections for Jaguar reflecting the probability of technical success determined by the management of Jaguar and projections for Napo reflecting the probability of technical success determined by the management of Jaguar, but no mention is made of any actual probabilities of success. These probabilities directly affect the revenues and cash flow projections as well as the dependent financial analyses. If Jaguar assigned a probability of success value too high for Napo or too low for themselves, they could have dramatically altered the apparent valuation of the respective companies. Therefore, it is necessary that the probabilities of success and their application to the financial projections be disclosed.

36. The omission of the above-referenced projections renders the financial projections included on pages 289-290 of the Proxy materially incomplete and misleading. If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

37. With respect to Stifel's Discounted Cash Flow Analysis, the Proxy fails to disclose the following key components used in their analysis: (i) the inputs and assumptions underlying the calculation of the discount rate range of 18.5% - 23.5% used for Napo; (ii) the inputs and assumptions underlying the calculation of the discount rate range of 16.5% - 21.5% used for Jaguar; (iii) the inputs and assumptions underlying the calculation of the perpetuity growth rate range of 2.0% to 5.0%; and (iv) the net cash amount applied to the enterprise value of each Jaguar and Napo used to arrive at the equity value that served as the basis for the valuation comparison of the two companies.

38. These key inputs are material to Jaguar shareholders, and their omission renders the summary of Stifel's Discounted Cash Flow Analysis on pages 285-286 of the Proxy incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses

CLASS ACTION COMPLAINT

bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion <u>unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices</u>. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78.

39.     With respect to Stifel's *Selected Publicly Traded Companies* and *Selected Precedent Transactions* Analyses (Proxy 280-285), the Proxy fails to disclose the individual multiples Stifel calculated for each company and transaction utilized. The omission of these multiples renders the summary of these analyses and the implied equity value reference ranges materially misleading.  A fair summary of Companies and Transactions Analyses requires the disclosure of the individual multiples for each company and transaction; merely providing the range that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied share price ranges.

40.     With respect to Stifel's *Contribution Margin Analysis*, the Proxy fails to disclose the various contribution margins denoted as "NM" (presumably meaning "not meaningful") and/or explain why Stifel deemed such margins to be "not meaningful."

41.    Further, the Proxy fails to disclose any information regarding past dealings or a historical relationship between Stifel and either Jaguar or Napo. Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates is required pursuant to 17 C.F.R. § 229.1015(b)(4). Such information is also material to Jaguar shareholders. Indeed, it is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed merger must be carefully considered in assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the merger to the shareholders, might have. Especially when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to him, given his overall economic interest, than only approving a deal at truly fair price to shareholders. The complete omission of any of Stifel's previous dealings or historical relationships renders the Proxy incomplete and misleading.

42.    Last, the Proxy repeatedly refers to the Merger Consideration in terms that fail to take into account the dilutive structure of the Merger Agreement. Throughout the Proxy it states that the Proposed Merger is based of 3-to-1 ownership ratio in the Combined Company with Jaguar stockholders expected to experience dilution in the amount of approximately 75% as a result of the Proposed Merger.  However, according to a small paragraph hidden in the notes prior to the analyses in the *Opinion of Jaguar Financial Advisor:*

> Based on a treasury stock dilution calculation, **taking into consideration the strike or exercise prices of the Jaguar dilutive securities to be issued in connection with the Transaction** and the strike or exercise prices of the outstanding Jaguar dilutive securities, as provided by Jaguar management, and the closing price of Jaguar common stock on March 27, 2017, Stifel calculated that the number of diluted shares comprising the Transaction Consideration (including those shares potentially issuable pursuant to options and warrants) would (i) be equal to **4.44 times** the number of diluted Jaguar shares and (ii) accordingly represent **82% of the sum** of the number of shares of Jaguar common stock and non-voting common stock comprising the

CLASS ACTION COMPLAINT

Transaction Consideration plus the number of diluted Jaguar shares, in each case calculated as described above.

Proxy 279.

43.    The Proxy references the 75% dilution figure at least 15 times and the 3-to-1 ratio 7 times. It fails to make clear that Jaguar shareholders will actually be diluted more likely 82% than 75%. The disparity in the presentation of these numbers evinces an intent to mislead shareholders regarding the most important fact about the Merger – the value of the consideration they stand to receive. Therefore, Jaguar **must** disclose a true and accurate representation of the Merger Consideration, so that shareholders may cast an **informed** vote at the upcoming shareholders meeting.

44.    In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

45.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

47.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.   Each of the Defendants reviewed and authorized the

dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, amongst other things: (i) the terms and details surrounding any alternative indications of interest the Company received from other companies or any information regarding a formal sales process; (ii) the financial projections for both Jaguar and Napo; (iii) the financial analyses performed by the Company's financial advisor, Stifel, Nicolaus & Company, Incorporated ("Stifel") in support of its fairness opinion; (iv) potential conflicts of interest Stiefel faced as a result of its historical dealings with either party; and (v) the misrepresentation of the Merger Consideration.

48.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

49.     Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections for both companies and the details surrounding discussions with other interested parties and Stifel.  Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review the bankers' analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

CLASS ACTION COMPLAINT

50.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of both companies' financial projections.

51.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Merger.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Jaguar within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Jaguar, and participation in and/or awareness of the Jaguar's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Jaguar, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

CLASS ACTION COMPLAINT

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Jaguar, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger.  The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Merger.  The Individual Defendants were thus directly involved in the making of the Proxy.

56.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

59.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

CLASS ACTION COMPLAINT

A.  Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.  Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.  Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  July 20, 2017

Respectfully submitted,

*/s/ David E. Bower*
   David E. Bower

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (310) 446-6652
Fax: (212) 202-7880
Email:  dbower@monteverdelaw.com

*Counsel for Plaintiff*

**OF COUNSEL**
**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel:  212-971-1341
Fax:  212-202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT