1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email: dbower@monteverdelaw.com

*Counsel for Lead Plaintiff Tony Plant and*
*Lead Counsel for the Putative Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY PLANT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JAGUAR ANIMAL HEALTH, INC., JAMES J. BOCHNOWSKI, LISA CONTE, JOHN MICEK III, and ARI AZHIR,<br><br>Defendants. | Case No. 3:17-cv-04102-RS<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: February 4, 2021<br>Time: 1:30 p.m.<br>Courtroom: 3 – 17th Floor<br>Judge: Hon. Richard Seeborg |

# **TABLE OF CONTENTS**

NOTICE OF MOTION……………………………………………………………………1

STATEMENT OF ISSUES TO BE DECIDED………………………………………2

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………...2

I.    PRELIMINARY STATEMENT……………………………………………2

II.   HISTORY OF THE LITIGATION………………………………….......3

   A.  Commencement of the Action……………………………………3

   B.  Discovery Undertaken by Lead Plaintiff…………………………………4

   C.  Settlement Negotiations and Mediation…………………………………...4

III.  TERMS OF THE PROPOSED SETTLEMENT……………………………...5

IV.   ARGUMENT……………………………………………………………5

   A.  The Proposed Settlement Should Be Preliminarily Approved……….………5

     1.  The Settlement is the Result of Good-Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel………………………………..6

     2.  The Settlement Has No Obvious Deficiencies and Does Not Improperly Grant Preferential Treatment to Lead Plaintiff or Segments of the Class…………..8

     3.  The Settlement Falls Within the Range of Possible Approval………………..9

   B.  Certification of the Proposed Settlement Class for Settlement Purposes is Appropriate……………………………………………………...………11

     1.  The Settlement Class Satisfies the Requirements of Rule 23(a)……………11

       a.  The Numerosity Requirement is Satisfied…………………………..12

       b.  The Commonality Requirement is Satisfied……………………….12

       c.  The Typicality Requirement is Satisfied…………………………….13

       d.  The Adequacy Requirement is Satisfied…………………………….13

     2.  The Settlement Class Meets the Requirements of Rule 23(b)(3)……………14

       a.  Common Legal and Factual Questions Predominate………………14

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 3:17-cv-04102-RS

b.  A Class Action is Superior to Other Methods of Adjudication…………........14

C.  The Notice Program Satisfies Due Process Requirements and is Sufficient Under Rule 23 and the PSLRA………………………………………………………….15

D.  Anticipated Legal Fees and Expenses …………………………………………18

E.  Proposed Schedule of Events………….…………………………………………18

V.      CONCLUSION………………………………………………………………………19

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 3:17-cv-04102-RS

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                       **PAGE(S)**

3

*Alberto v. GMRI, Inc.*,

4

   252 F.R.D. 652 (E.D. Cal. 2008) ............................................................................ 6

5

*Amchem Prods. v. Windsor*,

   521 U.S. 591 (1997) ................................................................................... 11-15

6

*Bert v. AK Steel Corp.*,

7

   No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio Oct. 23, 2008) ........................ 6

8

*Blackie v. Barrack*,

9

   524 F.2d 891 (9th Cir. 1975) ............................................................................... 12

10

*In re Celera Corp. Secs. Litig.*,

   No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228 (N.D. Cal. Mar. 31, 2015) .......... 17

11

*Churchill Vill., L.L.C. v. GE*,

12

   361 F.3d 566 (9th Cir. 2004) ........................................................................ 9, 11

13

*In re Cooper Cos. Sec. Litig.*,

   254 F.R.D. 628 (C.D. Cal. 2009) ....................................................................... 12

14

*In re DaimlerChrysler AG Sec. Litig.*,

15

   216 F.R.D. 291 (D. Del. 2003) ........................................................................... 14

16

*De Leon v. Ricoh USA, Inc.*,

   No. 18-cv-03725-JSC, 2019 U.S. Dist. LEXIS 204442 (N.D. Cal. Nov. 25, 2019) ........... 6-7

17

*Desai v. Deutsche Bank Sec. Ltd.*,

18

   573 F.3d 931 (9th Cir. 2009) ............................................................................. 15

19

*In re Extreme Networks, Inc. Sec. Litig.*,

20

   No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886 (N.D. Cal. July 22, 2019) ............... 8

21

*Fraley v. Facebook, Inc.*,

   966 F. Supp. 2d 939 (N.D. Cal. 2013) ............................................................... 8-9

22

*Hanlon v. Chrysler Corp.*,

23

   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 12, 13

24

*Hemphill v. San Diego Ass'n of Realtors*,

   225 F.R.D. 616 (S.D. Cal. 2004) ......................................................................... 6

25

*In re Hot Topic, Inc. Sec. Litig.*,

26

   Case No. CV 13-02939 SJO (JCx),

   2014 U.S. Dist. LEXIS 155544 (C.D. Cal. Nov. 3, 2014) .................................... 14

27

- iii -

28

*Kim v. Tinder, Inc.*,
  No. CV 18-3093-JFW(ASx), 2019 U.S. Dist. LEXIS 108041 (C.D. Cal. June 19, 2019) ....... 7

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................ 7

*Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*,
  611 F. Supp. 990 (C.D. Cal. 1984) .................................................................... 12

*In re Portal Software Sec. Litig.*,
  No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) ......... 6, 9, 10

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................ 8

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D. Cal. 1985) ...................................................................... 12

*In re Seagate Tech. II Sec. Litig.*,
  843 F. Supp. 1341 (N.D. Cal. 1994) .................................................................. 15

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ........................................................................... 5

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 5, 6

*Todd v. STAAR Surgical Co.*,
  No. CV 14-5263 MWF (GJSx),
  2017 U.S. Dist. LEXIS 176183 (C.D. Cal. Oct. 24, 2017) ................................... 8, 18

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. 2020) ................................................................. 5

*In re Zynga Sec. Litig.*,
  No. 12-CV-4250-JSC, 2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27, 2015) ............. 6

**STATUTES, RULES & REGULATIONS**

15.U.S.C. § 78n(a) .......................................................................................... 3

15.U.S.C. § 78t(a) ........................................................................................... 3

15 U.S.C. § 78u-4 .................................................................................. 3, 8, 16

17 C.F.R. § 240.14a-9 .................................................................................... 3

Fed. R. Civ. P. 23 ................................................................................. *passim*

1

## NOTICE OF MOTION

2

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3      PLEASE TAKE NOTICE that on Thursday, February 4, 2021 at 1:30 p.m., or as soon

4   thereafter as counsel may be heard before the Honorable Richard Seeborg, United States District

5   Judge, at the United States Courthouse, United States District Court, Northern District of

6   California, 450 Golden Gate Ave., San Francisco, California, Lead Plaintiff Tony Plant ("Lead

7   Plaintiff"), on behalf of himself and all Settlement Class Members,[1] will and hereby does move

8   for entry of the Proposed Order Preliminarily Approving Settlement and Providing for Notice

9   (Stipulation, Ex. A), which will: (1) preliminarily approve the terms of the proposed Settlement

10   as set forth in the Stipulation; (2) conditionally certify the Settlement Class for purposes of

11   implementing the proposed Settlement; (3) approve the form and method for providing notice of

12   the proposed Settlement and Final Approval Hearing to the Settlement Class; and (4) schedule

13   the Final Approval Hearing.

14      The grounds for this motion are that the proposed Settlement is within the range of what

15   could be found to be fair, reasonable, and adequate, such that notice of its terms may be

16   disseminated to members of the proposed Settlement Class and a hearing for final approval of

17   the proposed Settlement scheduled.

18      This motion is supported by the following memorandum of points and authorities, the

19   accompanying Declaration of Juan E. Monteverde and the exhibits thereto, including the

20   Stipulation and its exhibits, the previous filings and orders in this case, and such other and further

21   representations as may be made by counsel at any hearing on this matter.

22

23

24

25

---

[1]   All capitalized terms not defined herein have the same meanings set forth in the Stipulation of

26   Settlement dated December 29, 2020 ("Stipulation") and filed contemporaneously herewith as
Exhibit 1 to the Declaration of Juan E. Monteverde in Support of Lead Plaintiff's Motion for

27   Preliminary Approval of Settlement ("Monteverde Decl.").

28

1

**STATEMENT OF ISSUES TO BE DECIDED**

2

    1.      Whether the proposed $2,600,000 Settlement is within the range of fairness,

3

reasonableness, and adequacy to warrant the Court's preliminary approval and the

4

dissemination of notice of its terms to members of the proposed Settlement Class.

5

    2.      Whether the Settlement Class should be preliminarily certified pursuant to Federal

6

Rule of Civil Procedure 23(b)(3) for purposes of settlement.

7

    3.      Whether the proposed form of settlement notice and proof of claim and release form

8

and the manner for dissemination to the Settlement Class Members should be approved.

9

    4.      Whether the Court should set a date for a hearing for final approval of the proposed

10

Settlement and the application of Lead Counsel for an award of attorneys' fees and

11

reimbursement of costs and expenses.

12

**MEMORANDUM OF POINTS AND AUTHORITIES**

13

**I.    PRELIMINARY STATEMENT**

14

    Lead Plaintiff has secured a cash settlement in the amount of $2,600,000. The Settlement

15

Amount represents a meaningful recovery for the Settlement Class in light of (i) the implied

16

equity values for Jaguar at the time of the Merger, which Jaguar's financial advisor Stifel

17

determined ranged as low as $26 million based upon Jaguar's anticipated 2018 revenues;[2] and

18

(ii) the fact that directors and officers of Jaguar and Napo, who owned over 5.7 million Jaguar

19

shares, will not partake in the recovery.[3] And the $2.6 million Settlement Amount looks like an

20

even better deal for the Settlement Class when weighed against the significant risks of further

21

litigation. The proposed Settlement was achieved after substantial completion of document

22

discovery, consultation with a damages expert, and a thorough mediation process including

23

arm's-length negotiations overseen by an experienced mediator. As set forth below, the

24

Settlement easily falls within the range of reasonableness, and warrants preliminary approval.

25

26

      [2]  Proxy (ECF No. 22-1) at pg. 296 of 566 (internal pg. 285).

27

      [3]  Stipulation at 10; Notice (Stipulation Exhibit A-1) at 11.

28

## II.   HISTORY OF THE LITIGATION

### A.   Commencement of the Action

Lead Plaintiff filed this Action on July 20, 2017, against Jaguar and its board of directors (the "Defendants"). ECF No. 1. Lead Plaintiff alleged Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, by soliciting approval of the Merger between Jaguar and Napo via a materially false and misleading proxy statement ("Proxy"). *Id*. Jaguar announced the completion of the Merger on July 31, 2017.

On October 3, 2017, Lead Plaintiff filed a motion seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and sought approval of his selection of Monteverde & Associates, PC ("Monteverde") as Lead Counsel. ECF No. 12. On December 11, 2017, the Court appointed Mr. Plant as Lead Plaintiff, and approved his selection of Monteverde as Lead Counsel. ECF No. 18.

On January 10, 2018, Lead Plaintiff filed an Amended Class Action Complaint. ECF No. 19. In response, Defendants filed a Motion to Dismiss on March 12, 2018. ECF No. 22. Lead Plaintiff filed his Opposition to Defendants' Motion to Dismiss on April 23, 2018. ECF No. 25. The Court heard argument on Defendants' Motion to Dismiss on June 14, 2018. ECF No. 33.

On September 20, 2018, the Court granted Defendants' Motion to Dismiss, but granted Lead Plaintiff leave to amend. ECF No. 42.

On October 10, 2018, Lead Plaintiff filed a Second Amended Complaint. ECF No. 45. Defendants filed a second Motion to Dismiss ("Second Motion to Dismiss") on November 6, 2018. ECF No. 47. Lead Plaintiff filed his Opposition to Defendants' Second Motion to Dismiss on December 21, 2018. ECF No. 51. On June 28, 2019, the Court denied Defendants' Second Motion to Dismiss. ECF No. 64.

On July 18, 2019, the Court held a telephonic Initial Case Management Conference with Lead Plaintiff and Defendants and issued a Scheduling Order. ECF Nos. 69, 70.

On August 2, 2019, Defendants filed their answer to the Second Amended Complaint. ECF No. 71.

**B.     Discovery Undertaken by Lead Plaintiff**

Lead Plaintiff conducted thorough fact discovery relating to the claims at issue in this Action. Specifically, Lead Plaintiff obtained discovery from Defendants that included 277,532 pages of documents containing e-mail communications, board materials, financial data and projections, analyst reports, and other Merger related documentation. Lead Plaintiff also produced documents to Defendants. Further, Lead Plaintiff issued subpoenas and obtained documents from Jaguar's financial advisor, Stifel. Lead Plaintiff and Lead Counsel thoroughly reviewed all discovery and consulted with their damage's expert.

**C.     Settlement Negotiations and Mediation**

Significant discovery had been completed and reviewed by Lead Counsel before Lead Plaintiff agreed to explore possible settlement with Defendants. In light of such discovery, Lead Plaintiff and Lead Counsel were well-positioned to evaluate the case, including the likelihood of establishing loss causation, the potential recoverable damages, and the risks of success on various other legal issues.

The parties agreed to attend mediation before mediator Robert A. Meyer from JAMS on September 21, 2020. Lead Plaintiff submitted a comprehensive mediation statement accompanied by 24 exhibits related to evidence obtained during discovery. Lead Counsel thoroughly prepared for mediation and zealously advocated for Lead Plaintiff and the Settlement Class during settlement discussions. Mediation lasted all day, but the parties did not settle at that time. However, they continued to have discussions under the supervision of Mr. Meyer, which ultimately led to the Settlement on October 19, 2020, in the amount of $2,600,000 (subject to the parties finalizing the Stipulation).

1   On November 9, 2020, the Settling Parties executed a term sheet memorializing the key

2   terms of the Settlement, and Lead Plaintiff filed a Notice of Settlement. ECF No. 79.

3   **III.   TERMS OF THE PROPOSED SETTLEMENT**

4   On December 29, 2020, after arm's-length negotiations, the Settling Parties executed the

5   Stipulation, which sets forth the full terms of the proposed Settlement resolving the claims of the

6   Settlement Class. As a result of the Settlement, Jaguar shall cause the Settlement Amount of

7   $2,600,000 to be paid into the Escrow Account and distributed to the Authorized Claimants in

8   accordance with the Plan of Allocation described fully in the Notice (attached as Exhibit A-1 to

9   the Stipulation, which is Exhibit 1 to the Monteverde Declaration).

10  **IV.   ARGUMENT**

11  Lead Plaintiff respectfully submits that the Settlement satisfies the standard for preliminary

12  approval, and eventually final approval, because it is fair, reasonable, and adequate. However,

13  at this procedural stage the Court need only determine that it "will likely be able to" grant final

14  approval of the Settlement. Fed. R. Civ. P. 23(e)(1)(B); *In re Wells Fargo & Co. S'holder*

15  *Derivative Litig.*, 445 F. Supp. 3d 508, 516-17 (N.D. Cal. 2020). In other words, "[t]he court's

16  task at the preliminary approval stage is to determine whether the settlement falls within the

17  range of possible approval." *Id.* (internal quotation marks omitted).

18  **A.   The Proposed Settlement Should Be Preliminarily Approved**

19  Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of any

20  settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a class

21  action. The process involves two stages: preliminary approval followed by notice to the class,

22  and then final approval after a hearing. *See Wells Fargo*, 445 F. Supp. 3d at 516-17.

23  The Ninth Circuit has repeatedly reiterated the "strong judicial policy that favors

24  settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA*

25  *Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Whether a settlement should be preliminarily

26  approved hinges on whether an initial presumption of fairness is established. *In re Tableware*

27  *Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Preliminary approval is warranted

28

if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class; and (3) falls within the range of possible approval. *Id.* A full fairness hearing is unnecessary at the preliminary approval stage because the "settlement need only be *potentially* fair," as the court will make a final determination of fairness at the final approval hearing. *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007 (JSC), 2015 U.S. Dist. LEXIS 145728, at *32 (N.D. Cal. Oct. 27, 2015); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665-66 (E.D. Cal. 2008).

### 1. *The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel*

As to the first factor, generally, a proposed settlement is deemed fair if it resulted from arm's-length negotiations. *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138 VRW, 2007 U.S. Dist. LEXIS 51794, at *15 (N.D. Cal. June 30, 2007).  Arm's-length negotiations typically take place over an extended period of time with experienced counsel on both sides, each with an understanding of the strengths and weaknesses of their own and the opposing party's claims. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

The Settlement at issue is the product of serious, informed, non-collusive negotiations between the parties. The Settlement was the product of over three years of litigation, substantial document discovery, a mediation, and continued discussions via an experienced mediator. Indeed, Mr. Meyer has been a mediator for more than 12 years, serving as mediator for cases regarding complex business litigation all over the United States, including securities and derivative class actions. JAMS, Robert A. Meyer, Esq., https://www.jamsadr.com/meyer/ (last visited Dec. 30, 2020). The participation of an independent mediator in settlement negotiations "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711, at *7 (S.D. Ohio Oct. 23, 2008) (citing *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005)); s*ee also De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2019

6

U.S. Dist. LEXIS 204442, at *29 (N.D. Cal. Nov. 25, 2019); *Kim v. Tinder, Inc.*, No. CV 18-3093-JFW(ASx), 2019 U.S. Dist. LEXIS 108041, at *36 (C.D. Cal. June 19, 2019) (collecting cases). Moreover, the Settling Parties exchanged detailed briefs prior to the mediation and participated in a mediation during which the strengths and weaknesses of their respective claims and defenses were extensively debated.

Additionally, Lead Plaintiff has vigorously litigated this Action over the past three years. Mediation did not occur until September 2020, after the Parties had already engaged in and completed extensive discovery. Prior to the mediation, Lead Plaintiff prevailed in substantive motion practice, as Defendants attempted to dismiss this Action twice. And in preparation for mediation, Lead Plaintiff obtained and evaluated significant document discovery and consulted with a damages expert. As a result, Lead Counsel had a thorough understanding of the facts and law at issue during mediation. Simply put, at the time the Settlement was reached, Lead Plaintiff and Lead Counsel were well-informed of the strengths and weaknesses of the claims and defenses at issue, as well as the fairness of the Settlement. Indeed, "[t]he use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiff [was] armed with sufficient information about the case to broker a fair settlement." *De Leon*, 2019 U.S. Dist. LEXIS 20442, at *29.

Finally, the Court should give Lead Counsel's recommendation a presumption of reasonableness because Lead Counsel has significant expertise in securities litigation.[4] *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Based upon their experience, Lead Counsel is well-suited to evaluate the fairness of the Settlement and to determine whether it is in the best interests of the Settlement Class. Lead Counsel's conclusion that the Settlement is fair, adequate, and reasonable is predicated on their knowledge of the strengths and weaknesses of the Settlement Class' claims based on the evidence adduced to date, as well as Lead Counsel's analysis of Defendants' legal and factual arguments, and the potential

---

[4]  *See* Monteverde Decl. Ex. 2 (firm resume), Ex. 3 (table of comparable settlements).

risk that the Court or a jury may have ruled in favor of Defendants – resulting in no recovery for the Settlement Class. Lead Counsel's opinion should therefore be afforded considerable weight.

In sum, the Settlement is the product of serious, informed, non-collusive negotiations between the Parties, which warrants granting preliminary approval.

### 2. *The Settlement Has No Obvious Deficiencies and Does Not Improperly Grant Preferential Treatment to Lead Plaintiff or Segments of the Class*

The Settlement has no obvious deficiencies and does not grant improper or preferential treatment to Lead Plaintiff or other segments of the Settlement Class. Under the Plan of Allocation, each Authorized Claimant that submits a valid, timely Proof of Claim will receive distribution from the Net Settlement Fund on a pro rata basis. Stipulation at 8, 22-23, Notice at 11. Therefore, assuming 100% of the shares in the Settlement Class submit a valid and timely Proof of Claim, the average distribution will be $0.22 per share owned (before the payment of Court-approved fees and expenses (estimated to be less than $0.07 per share) and the cost of notice and claims administration). Notice at 5. This means that every shareholder in the Settlement Class will receive equal treatment under the Plan of Allocation.

While Lead Plaintiff intends to seek an award of reasonable costs and expenses directly relating to his representation of the Settlement Class in an amount up to $10,000 pursuant to 15 U.S.C. § 78u-4(a)(4), such an award would "not constitute inequitable treatment of class members." *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886, at *26 (N.D. Cal. July 22, 2019) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)); *see also Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183, at *15-16 (C.D. Cal. Oct. 24, 2017) (collecting "numerous cases in which service awards of $10,000 or more are found reasonable").

With respect to the release, the claims in the Second Amended Complaint arise under the Exchange Act and are predicated on the Proxy and Merger. ECF No. 19. The definition of "Released Claims" in the Stipulation contains the typical language "to ensure that it applies to all appropriate persons…and to all appropriate claims," *Fraley v. Facebook, Inc.*, 966 F. Supp.

8

2d 939, 947 (N.D. Cal. 2013), but is limited to what this Action is about—the Proxy and Merger. Specifically, the following emphasized language from the definition of "Released Claims" acts to limit the release in an appropriate manner: "[A]ny and all claims…that have been asserted, could have been asserted, or could be asserted in the future by a member of the Settlement Class *in his, her or its capacity as a purchaser, seller or holder of Jaguar stock* against" Defendants and their affiliates "that arise out of or relate in any way to: *(i) the Action, (ii) the Merger, and (iii) the Proxy or disclosures related to the Merger.*" Stipulation at 9. "As such, the release does not represent overreaching, or present a concern that class members are relinquishing more than would be warranted." *Fraley*, 966 F. Supp. 2d at 947.

### 3. *The Settlement Falls Within the Range of Possible Approval*

This Settlement warrants preliminary approval because it is an excellent result given the value of Jaguar prior to the Merger, the numerous and substantial risks of further litigation (including the risk of summary judgment being granted in Defendants' favor), the additional expenses associated with further litigation, and the complexity of the Action. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *16.

While Lead Plaintiff believes the asserted claims have merit and are supported by the evidence obtained in discovery, Lead Plaintiff and the Settlement Class nevertheless faced significant obstacles to recovery. Even assuming Lead Plaintiff defeated Defendants' motion for summary judgment, there would still be a substantial risk that he could not prove loss causation or damages in excess of the Settlement Amount at trial.

In the Second Amended Complaint, Lead Plaintiff alleged that the Proxy contained the following material misstatements and omissions: (i) statements and projections prepared by Defendants that reflected Equilevia as a prescription product, even though Defendants knew that it was going to be sold and marketed as a non-prescription product; (ii) the summary of Stifel's Discounted Cash Flow Analysis of Jaguar; and (iii) the omissions of (a) the projected unlevered

free cash flows that both Jaguar and Napo were expected to generate between 2017 and 2026, (b) the purportedly "not meaningful" unlevered free cash flow contribution margins for Jaguar and Napo from 2017-2021, and (c) the pro-forma projections for Jaguar and Napo giving effect to the Merger. ECF No. 19.

However, Defendants have vehemently denied the claims asserted by Lead Plaintiff. With respect to the first allegation, Defendants argue that Equilevia was an immaterial part of Jaguar's business. Second Motion to Dismiss (ECF No. 47) at 3. As for the second allegation, Defendants claim that it amounts "to nothing more than a post-hoc disagreement with the substance of Stifel's analysis, not with whether that analysis was adequately disclosed." *Id.* at 2. Regarding Lead Plaintiff's third allegation, Defendants argue that omission of unlevered free cash flows, cash flow contribution margins, and pro forma projections are immaterial. *Id.* And, in denying the Defendants' Second Motion to Dismiss, the Court focused its analysis solely on the statements related to Equilevia, and found that in light of the fact that Lead Plaintiff "stated a claim based at least on the allegations regarding Equilevia," "there [was] no basis to parse the allegations to decide at this juncture whether the proxy included other actionable misstatements or was misleading as the result of any material omissions." ECF No. 64 at 4. Thus, establishing Defendants' liability at summary judgment or trial would be difficult and complex, with success far from certain.

Moreover, even if liability were established, the Settlement Class still faced considerable risk establishing loss causation and proving damages. Although Lead Plaintiff contends that his theory of loss causation and economic loss are appropriate and that damages could range from $5.2 million to $9.9 million, Defendants have repeatedly emphasized that Lead Plaintiff cannot establish causally-related damages, because Lead Plaintiff's damages theory is derived solely from the alleged Equilevia misrepresentation and any potential sales for that product. Under the circumstances, the proposed Settlement is a good outcome for the Settlement Class. The Settlement eliminates the risks of continued litigation, which warrants granting preliminary approval. *See Churchill Vill., L.L.C.*, 361 F.3d at 576.

**B.    Certification of the Proposed Settlement Class for Settlement Purposes is Appropriate**

In granting preliminary settlement approval, the Court should also conditionally certify the Settlement Class for purposes of effectuating the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Courts have long acknowledged the propriety of a settlement class. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and Rule 23(b)(3). *See id.* at 607-09.  As demonstrated below, the proposed Settlement Class does so.

Furthermore, there are no substantive differences between the Settlement Class and the class proposed in the Second Amended Complaint, as both were defined to capture Jaguar shareholders who were harmed by Defendants' actions in conjunction with the Proxy and resulting Merger.[5]

**1.    *The Settlement Class Satisfies the Requirements of Rule 23(a)***

Class certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims/defenses of the class representative are typical of the claims/defenses of the class ("typicality"); and (4) the class representative will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a);

---

[5]   The Second Amended Complaint defined the "Class" in a generalized manner as "all holders of Jaguar common stock who were harmed by Defendants' actions described" therein. ECF No. 45 at ¶ 83. The Stipulation defines the Settlement Class and the Settlement Class Period with the requisite level of specificity, anchored by the appropriate dates to encompass those Jaguar shareholders who held shares as of the record date for voting on the Merger and were alleged to be harmed by the Merger. *See* Stipulation at 10 (defining the Settlement Class as "all record holders and all beneficial holders of Jaguar common stock who purchased, sold or held such stock during the period from and including June 30, 2017, the record date for voting on the Merger, through and including July 31, 2017, the date the Merger closed, including any and all of their respective predecessors, successors, trustees, executors, administrators, estates, legal representatives, heirs, assigns and transferees.", and defining "Settlement Class Period" as "the period commencing on June 30, 2017 and ending on July 31, 2017, inclusive.").

1   *Amchem*, 521 U.S. at 613; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). As
2   discussed below, the proposed Settlement Class meets each of these requirements.

3                    a.    The Numerosity Requirement is Satisfied

4        First, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is
5   impracticable." There is no exact class size necessary to satisfy numerosity; all that is required
6   is common sense indicating that the class is large enough. *See Perez-Funez v. District Director,*
7   *I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984). Further, Lead Plaintiff is not required to state the
8   exact number of class members in the proposed class. *Schwartz v. Harp*, 108 F.R.D. 279, 281-
9   82 (C.D. Cal. 1985).

10       The numerosity requirement is plainly satisfied here, as Lead Plaintiff estimates that there
11  are approximately 11.6 million shares of Jaguar common stock in the Settlement Class (Notice
12  at 11) that are held by hundreds to thousands of shareholders across the United States. *See In re*
13  *Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (courts may infer that, when a
14  corporation has millions of shares trading on a national exchange, the numerosity requirement is
15  met).

16                    b.    The Commonality Requirement is Satisfied

17  Second, *Rule* 23 (a ?YEAR?) (2)'s commonality requirement does not mandate that *all* questions
18  of law and fact be common to all class members, rather the class can have at least one shared
19  legal issue with differing factual scenarios, or common material facts with differing legal
20  remedies. *Hanlon*, 150 F.3d at 1019. In *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), the
21  Ninth Circuit held that a class of purchasers allegedly defrauded by the same misrepresentations
22  made by Ampex Corporation satisfied the commonality requirement. *Id*. at 902.

23       Here, similar to *Blackie*, the Settlement Class Members all held Jaguar shares during the
24  Settlement Class Period, and thus all share common questions of law and fact, particularly
25  whether Defendants violated Sections 14(a) and 20(a) of the Exchange Act by preparing and
26  disseminating a materially false and misleading Proxy, and whether they were damaged as a
27  result. Accordingly, the Settlement Class satisfies the commonality requirement.

28                                         12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c.      The Typicality Requirement is Satisfied

Third, Rule 23(a)(3) requires that the class representative's claims be "typical" of those of the other class members. Under Rule 23(a)'s permissive standards, a class representative's claims are "typical" if they are reasonably co-extensive with those of the other class members. However, the claims need not be substantially identical. *See Amchem*, 521 U.S. at 625; *Hanlon*, 150 F.3d at 1020.

As mentioned above, Lead Plaintiff and the other Settlement Class Members all held Jaguar common stock during the Settlement Class Period, and their claims arise from the allegedly misleading Proxy and resulting Merger. Therefore, the typicality requirement is satisfied.

d.      The Adequacy Requirement is Satisfied

Fourth, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Legal adequacy in the Ninth Circuit is determined using the following two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel have no conflicts of interest with each other or any of the other Settlement Class Members. They have always been committed to obtaining the best possible result for the Settlement Class, as evinced by the history of this Litigation, discussed above. Lead Plaintiff has also faithfully represented the Settlement Class, including by reviewing the complaints and other filings, producing documents in response to Defendants' discovery requests, and communicating with Lead Counsel throughout the Litigation. Furthermore, Lead Counsel has invested considerable time and resources in prosecuting this Action, which enabled them to negotiate an outstanding Settlement for the Settlement Class.

In sum, the adequacy requirement is satisfied, and the Settlement Class meets all four requirements for class certification under Rule 23(a).

13

1

**2.  *The Settlement Class Meets the Requirements of Rule 23(b)(3)***

2

Lead Plaintiff seeks certification of the Settlement Class pursuant to Fed. R. Civ. P.

3

23(b)(3). Certification under Rule 23(b)(3) requires "that the questions of law or fact common

4

to class members predominate over any questions affecting only individual members, and that a

5

class action is superior to other available methods for fairly and efficiently adjudicating the

6

controversy." When assessing predominance and superiority, the court may consider that the

7

class will be certified for settlement purposes only, and thus a showing of manageability at trial

8

is not required. *See Amchem*, 521 U.S. at 618.

9

a.    Common Legal and Factual Questions Predominate

10

Here, questions common to all Settlement Class Members substantially predominate over

11

any individualized questions. Specifically, the common issues in this Action that predominate

12

over individual ones are: (1) whether the Proxy contained materially false or misleading

13

statements; and (2) whether the alleged material misrepresentations and omissions caused

14

recoverable losses. *See In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 300 (D. Del.

15

2003); *In re Hot Topic, Inc. Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2014 U.S. Dist. LEXIS

16

155544, at *17 (C.D. Cal. Nov. 3, 2014). The same alleged course of conduct by Defendants

17

forms the basis of all Settlement Class Members' claims. As set forth above, there are numerous

18

common issues relating to Defendants' liability at the core of this Action, which predominate

19

over any individualized issues; therefore, the predominance requirement of Rule 23(b)(3) is met.

20

b.    A Class Action is Superior to Other Methods of Adjudication

21

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a

22

determination of whether class certification is the superior method of litigation: "(A) the class

23

members' interests in individually controlling the prosecution . . . of separate actions; (B) the

24

extent and nature of any litigation concerning the controversy already begun by . . . class

25

members; (C) the desirability or undesirability of concentrating the litigation of the claims in the

26

particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P.

27

23(b)(3). In securities cases predicated on false or misleading statements that were disseminated

28

14

to numerous shareholders, class actions are superior to other methods of adjudication because they promote judicial economy. *See Desai v. Deutsche Bank Sec. Ltd*, 573 F.3d 931, 937 (9th Cir. 2009); *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1351-52 (N.D. Cal. 1994).

In this case, the Stipulation provides Settlement Class Members with the ability to obtain prompt and certain relief through well-defined administrative procedures assuring due process. This includes the right of any Settlement Class Member dissatisfied with the Settlement to object to it, or to exclude themselves from the Settlement Class. The Settlement also relieves the substantial judicial burdens that would result from repeated adjudication of the same issues in hundreds to thousands of individualized trials against Defendants, by affording settlement relief to the Settlement Class through certification as a class action. Since the parties seek to resolve this Action through a settlement, any manageability issues that could have arisen at trial are irrelevant. *See Amchem*, 521 U.S. at 620. Finally, the complexity of the claims asserted against Defendants and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification. For all the reasons mentioned, a class action is a superior method of adjudication for this Litigation.

In sum, the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and preliminary certification of the proposed Settlement Class is appropriate.

## C.   The Notice Program Satisfies Due Process Requirements and is Sufficient Under Rule 23 and the PSLRA

Rule 23(e)(1) of the Federal Rules of Civil Procedure requires that all members of the class be notified of the terms of any proposed settlement. The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B). Furthermore, in securities class actions, the PSLRA requires that the notice provide the following information:

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 3:17-cv-04102-RS

(1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."

15 U.S.C. § 78u-4(a)(7).

Here, the proposed form of the Notice (Stipulation Exhibit A-1) meets these requirements. The Notice describes the Settlement and sets forth the Settlement Amount in the aggregate and on an average per share basis. *Id*. at 5, 11. The Notice describes the Settling Parties' disagreement over damages and liability. *Id*. at 3-4.  The Notice sets out the limits on attorneys' fees and expenses Lead Counsel intends to seek from the Settlement Fund, and describes the proposed Plan of Allocation. *Id*. at 2-5. The Settling Parties agreed on the form of the Notice to be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses have been or can be identified from or through Jaguar's transfer records. The Notice also summarizes the nature, history, and status of the Action, sets forth the definition of the Settlement Class, states the Settlement Class' claims and issues, discusses the rights of persons who fall within the definition of the Settlement Class (including the right to be excluded or object to Settlement and all relief requested in connection thereto), and summarizes the reasons the Settling Parties are proposing the Settlement. The Notice also contains instructions on how to access the case docket via PACER or in person at the Court. *Id*. at 10-11.

Further, the Notice includes detailed information on the process and requirements for requesting exclusion from the Settlement Class. *Id*. at 8. It also informs the Settlement Class of what will happen if they do nothing at all. *Id*. at 10. The Notice provides instructions on the

16

timing and process for completing and submitting the Proof of Claim form that accompanies the Notice. *Id*. at 6-7. The Notice also informs Settlement Class Members that copies of the Notice and Proof of Claim form may be obtained by writing the Claims Administrator, or by accessing the documents on the Settlement website.

The Notice concisely explains the Settlement Class Members' opt-out rights, including the timing and method to opt-out. *Id*. at 2, 8. For those Settlement Class Members who do not wish to opt-out, the Notice provides that they can object to the Settlement or the request for fees and expenses. *Id*. at 9. The Notice also explains the difference between objecting to the Settlement and opting out of the Settlement. *Id*. at 2.

The Notice will set forth the date, time, and place of the Final Approval Hearing, and clearly states that the date may change without further notice and that Settlement Class members should check with Lead Counsel or the Settlement website beforehand to ensure that the date and/or time has not changed. *Id*. at 10. It also sets forth the procedures for commenting on the Settlement, and includes addresses for the Court, Lead Counsel, and counsel for Defendants. *Id*. at 9-10. In addition, the Claims Administrator will send the Notice to entities which commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers. *Id*. at 12. Lead Plaintiff further proposes to distribute electronically a Summary Notice through *PRNewswire*. The Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3.

These proposed methods of giving notice (similar, if not identical, to the methods used in countless other securities class actions) have been "found to be satisfactory and meet due process." *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228, at *18-20 (N.D. Cal. Mar. 31, 2015). As such, the contents of the Notice and Summary Notice satisfy the requirements of Rule 23(e) and the PSLRA. Accordingly, the Court should approve the proposed Notice and Summary Notice.

### D.   Anticipated Legal Fees and Expenses

As set forth in the Notice, Lead Counsel intends to move for attorneys' fees of no more than one-third of the Settlement Fund, plus expenses not to exceed $40,000. A one-third fee of the $2,600,000 Settlement Amount would equate to approximately $866,666.67, which is less than the value of the time that Lead Counsel has expended in this case to date. Indeed, the requested fee would provide a negative multiplier to Lead Counsel, as their lodestar to date exceeds the fee requested.

With respect to Notice and Administration Costs, Lead Counsel has chosen RG/2 Claims Administration LLC ("RG/2") as the proposed Claims Administrator. Lead Counsel considered three bids from potential claims administrators in making this decision. Lead Counsel selected RG/2 because their proposal outlined the most reasonable estimated cost with respect to the administration services they would be providing. Specifically, RG/2's proposal estimated administrative costs of $57,073, whereas the proposals Lead Counsel received from JND Legal Administration and Epiq were $80,000 and $102,097, respectively. RG/2's estimated costs are reasonable in light of Lead Counsel's experience in similar settlements.

Lead Plaintiff also selected RG/2 because Lead Counsel has had positive experiences with RG/2 in other class action settlements. In the past two years, RG/2 has served as claims administrator for Lead Counsel in the following class action settlements: *Riche v. Pappas, et. al.,* C.A. No. 2018-0177-VCL (Del. Ch. Oct. 2, 2018) ($6.5 million settlement); *Patterson v. Repass et al.,* Case No. 17-CV-01995 (Cal. Super. Ct. Santa Cruz Cty. July 27, 2017) ($2.5 million settlement); *Campbell v. Transgenomic, Inc., et al.,* Civil No. 4:17-cv-03021 (D. Neb. Aug. 9, 2017) ($1.95 million settlement); and *In re MRV Communications, Inc. Stockholder Litigation,* Lead Case No. BC669601 (Cal. Super. Ct. Los Angeles Cty. July 21, 2017) ($1.9 million settlement).

### E.   Proposed Schedule of Events

The proposed Preliminary Approval Order includes the following schedule:

18

| Notice mailed to the Settlement Class ("Notice Date") | 21 calendar days after entry of the Preliminary Approval Order |
|---|---|
| Summary Notice published | 10 calendar days after the Notice Date |
| Deadline for filing briefs in support of the Settlement, certification of the Settlement Class, Plan of Allocation, or request for an award of attorneys' fees and expenses | 35 calendar days prior to the Final Approval Hearing |
| Deadline for requesting exclusion from the Settlement Class and objecting to the Settlement, Plan of Allocation, or request for an award of attorneys' fees and expenses | 21 calendar days prior to the Final Approval Hearing |
| File declaration confirming mailing and publishing Notice and Summary Notice | 7 calendar days prior to the Final Approval Hearing |
| Reply papers in support of the Settlement, Plan of Allocation, or request for an award of attorneys' fees and expenses | 7 calendar days prior to the Final Approval Hearing |
| Final approval hearing | At the Court's convenience, but no less than 110 calendar days after entry of the Preliminary Approval Order |
| Last day for submitting Proof of Claim and Release forms | 120 calendar days after the Notice Date or such other time as set by the Court |

*See* Preliminary Approval Oder (Exhibit A to the Stipulation) at 4-5, 7-8.

## V.   CONCLUSION

For the foregoing reasons, the proposed Settlement warrants this Court's preliminary approval, and entry of the Preliminary Approval Order.

Dated: December 30, 2020                                    Respectfully submitted,

**MONTEVERDE & ASSOCIATES PC**                 **MONTEVERDE & ASSOCIATES PC**

Juan E. Monteverde (*admitted pro hac vice*)
The Empire State Building                                       */s/ David E. Bower*
350 Fifth Avenue, Suite 4405                                  David E. Bower (SBN 119546)
New York, NY 10118                                            600 Corporate Pointe, Suite 1170
Tel.: (212) 971-1341                                             Culver City, CA 90230
Fax: (212) 202-7880                                             Tel: (213) 446-6652
Email:  jmonteverde@monteverdelaw.com           Fax: (212) 202-7880
                                                                        Email:  dbower@monteverdelaw.com

*Counsel for Lead Plaintiff and Lead*
*Counsel for the Putative Class*                             *Counsel for Lead Plaintiff and Lead*
                                                                        *Counsel for the Putative Class*