David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email: dbower@monteverdelaw.com

*Counsel for Lead Plaintiff Tony Plant and Lead Counsel for the Settlement Class*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY PLANT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JAGUAR ANIMAL HEALTH, INC., JAMES J. BOCHNOWSKI, LISA CONTE, JOHN MICEK III, and ARI AZHIR,<br><br>Defendants. | Case No. 3:17-cv-04102-RS<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 27, 2021<br>Time: 1:30 p.m.<br>Courtroom: 3 – 17th Floor<br>Judge: Hon. Richard Seeborg |

**TABLE OF CONTENTS**

NOTICE OF MOTION……………………………………………………………………………1

STATEMENT OF ISSUES TO BE DECIDED……………………………………………………..1

MEMORANDUM OF POINTS AND AUTHORITIES………………………………………….2

I.   PRELIMINARY STATEMENT……………………………………………………...2

II.  PRELIMINARY APPROVAL OF THE SETTLEMENT AND THE NOTICE PROGRAM……………………………………………………………………………3

III. ARGUMENT…………………………………………………………………………..3

    A. Final Approval is Warranted Because the Settlement is Fair, Reasonable, and Adequate………………………………………………………………………..3

        1. Application of the Ninth Circuit Factors Favors Final Approval of the Settlement…………………………………………………………………..5

            a. Strength of Lead Plaintiff's Case, and Risk, Expense, Complexity, and Likely Duration of Further Litigation…………………………………….5

            b. Risk of Maintaining Class Action Status Throughout the Trial………..6

            c. Amount Offered in Settlement……………………………………….....7

            d. Extent of Discovery Completed and the Stage of the Proceedings……...7

            e. Experience and Views of Counsel……………………………………..8

            f. Reaction of the Settlement Class Members to the Proposed Settlement....8

            g. Presence of a Governmental Participant…………………………….…9

        2. Final Approval of the Settlement is Also Supported by Application of the Four Factors Set Forth in Rule 23(e)(2)…………………………………………….9

            a. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class………………………………………………..………9

            b. The Proposed Settlement was Negotiated at Arm's Length………..……10

            c. The Relief for the Settlement Class is Excellent…………………..……10

            d. The Proposed Settlement Treats Settlement Class Members Equitably…12

      B.  The Plan of Allocation for the Settlement Fund Warrants Approval Because it is Fair, Reasonable, and Adequate……………………………………………………….13

      C.  Final Certification of the Proposed Settlement Class for Settlement Purposes is Appropriate……………………………………………………………...……….14

IV.    CONCLUSION…………………………………………………………………………14

# TABLE OF AUTHORITIES

**CASES**                                                                                                                      **PAGE(S)**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................. 14

*Bayat v. Bank of the W.*,
   No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416 (N.D. Cal. Apr. 15, 2015) ................ 7, 8

*Bert v. AK Steel Corp.*,
   No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio Oct. 23, 2008) ....................... 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...................................................................................... 4

*Booth v. Strategic Realty Tr., Inc.*,
   No. 13-cv-04921-JST, 2015 U.S. Dist. LEXIS 140723 (N.D. Cal. Oct. 15, 2015) ................. 8

*Campbell v. Transgenomic, Inc.*,
   No. 4:17-CV-3021, 2020 U.S. Dist. LEXIS 97063 (D. Neb. June 3, 2020) ........................ 13

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ......................................................................... 8

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ...................................................................................... 4

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................... 13

*De Leon v. Ricoh USA, Inc.*,
   No. 18-cv-03725-JSC, 2019 U.S. Dist. LEXIS 204442 (N.D. Cal. Nov. 25, 2019) .............. 10

*Evans v. Linden Rsch., Inc.*,
   No. C-11-01078 DMR, 2014 U.S. Dist. LEXIS 59432 (N.D. Cal. Apr. 29, 2014) .................. 8

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886 (N.D. Cal. July 22, 2019) .............. 13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................... 4

*In re Healthsouth Corp. Secs. Litig.*,
   334 F. App'x 248 (11th Cir. 2009) .............................................................................. 12

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17, 2018) .............. 12

*Hemphill v. San Diego Ass'n of Realtors*,
   225 F.R.D. 616 (S.D. Cal. 2004) ............................................................................... 10

*Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMx),
   2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) ...................................................... 11

*Kim v. Tinder, Inc.*,
   No. CV 18-3093-JFW(ASx), 2019 U.S. Dist. LEXIS 108041 (C.D. Cal. June 19, 2019) ..... 10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .................................................................................................. 7

*Mora v. Cal West AG Servs.*,
   No.: 1:15-cv-01490-LJO-EPG, 2019 U.S. Dist. LEXIS 80520 (E.D. Cal. May 13, 2019) .... 14

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................................ 13

*Pelletz v. Weyerhaeuser Co.*,
   255 F.R.D. 537 (W.D. Wash. 2009) ....................................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................................ 13

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................................................ 3

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................ 10

*In re Tracfone Unlimited Serv. Plan Litig.*,
   112 F. Supp. 3d 993 (N.D. Cal. 2015) ......................................................................... 4, 5, 6, 7

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020) ............................................................................ 3-4, 11-12

*In re Willis Towers Watson Pub. Ltd. Co. Proxy Litig.*,
   No. 1:17-cv-1338 (AJT/JFA), 2020 U.S. Dist. LEXIS 162810 (E.D. Va. Sept. 4, 2020) ........ 6

**STATUTES**

15 U.S.C. § 78n (Section 14 of the Securities Exchange Act of 1934) ............................. 8, 13, 14

15 U.S.C. § 78u-4(a)(4) ................................................................................................................ 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

7 Newberg on Class Actions § 22:59 (5th ed.) ............................................................................ 12

## NOTICE OF MOTION

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on Thursday, May 27, 2021, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Richard Seeborg, Chief United States District Judge, at the United States Courthouse, United States District Court, Northern District of California, 450 Golden Gate Ave., San Francisco, California, Lead Plaintiff Tony Plant ("Lead Plaintiff"), on behalf of himself and all Settlement Class Members,[1] will and hereby does move for: (1) entry of the Final Judgment and Order of Dismissal With Prejudice, approving the proposed Settlement and dismissing the Action with prejudice; (2) approval of the proposed Plan of Allocation to distribute the Settlement Fund; and (3) final certification of the Settlement Class, for the purpose of settlement only.

The grounds for this motion are that the proposed Settlement and proposed Plan of Allocation are both fair, reasonable, and adequate, such that final approval is warranted for both, and that the Settlement Class should be finally certified because the requirements of Fed. R. Civ. P. 23 remain satisfied.

This motion is supported by the following memorandum of points and authorities, the accompanying Declaration of Juan E. Monteverde ("Monteverde Decl.") and the exhibits thereto, and such other and further representations as may be made by counsel at any hearing on this matter.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed $2,600,000 Settlement is fair, reasonable, and adequate and warrants final approval by this Court.

2. Whether the proposed Plan of Allocation for distribution of the Settlement Fund is fair, reasonable, and adequate, such that final approval is warranted.

---

[1] All capitalized terms not defined herein have the same meanings as set forth in the Stipulation of Settlement dated December 29, 2020 ("Stipulation"), that was filed as Exhibit 1 to the Declaration of Juan E. Monteverde in Support of Lead Plaintiff's Motion for Preliminary Approval of Settlement on December 30, 2020 (ECF No. 81).

3. Whether the Settlement Class should be finally certified pursuant to Federal Rule of Civil Procedure 23(b)(3) for purposes of settlement.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PRELIMINARY STATEMENT

After three years of litigation, Lead Plaintiff has secured a Settlement of $2,600,000 for the Settlement Class. The Settlement Amount represents a sizeable recovery for the Settlement Class when measured against the potential damages it may have recovered at trial—if it overcame the various challenges of further litigation—which Lead Plaintiff's damages expert opined could range from $5.2 million to $9.9 million. The Settlement Amount also represents a meaningful recovery for the Settlement Class in light of the implied equity values for Jaguar at the time of the Merger, which Jaguar's financial advisor Stifel determined ranged as low as $26 million based upon Jaguar's anticipated 2018 revenues;[2] and (ii) the fact that directors and officers of Jaguar and Napo, who owned over 5.7 million Jaguar shares, will not partake in the recovery.[3] And the Settlement Amount is a particularly favorable recovery for the Settlement Class in light of the significant risks of continued litigation (detailed below).

The proposed Settlement was achieved after the Parties dedicated significant time, effort, and resources to the Action. In 2017, Lead Plaintiff filed the initial Complaint and then filed a Motion to Appoint Lead Plaintiff and Lead Counsel. Thereafter, the Parties engaged in substantive motion practice, as two motions to dismiss were adjudicated by this Court. After the first Motion to Dismiss was granted, Lead Plaintiff filed an Amended Complaint that honed in on his theory of the case. After the Court denied the Second Motion to Dismiss, the Parties completed substantial document discovery, Lead Plaintiff consulted with a damages expert, and the Parties then engaged in a thorough full-day mediation led by the experienced securities class action JAMS mediator, Robert A. Meyer, Esq. Although the mediation did not yield a settlement, the Parties continued arm's-length negotiations facilitated by Mr. Meyer, which ultimately led

---

[2] Proxy (ECF No. 22-1) at pg. 296 of 566 (internal pg. 285).
[3] Stipulation at 10; Notice (Stipulation, Exhibit A-1) at 11.

2

to the proposed Settlement. As detailed below, the Settlement is fair, reasonable, and adequate, warranting final approval by this Court.

## II. PRELIMINARY APPROVAL OF THE SETTLEMENT AND THE NOTICE PROGRAM

On December 30, 2020, Lead Plaintiff filed a Motion for Preliminary Approval of Settlement, along with the Stipulation of Settlement and its accompanying exhibits, including the Notice of Pendency, Proof of Claim and Release, Summary Notice, Proposed Order for Preliminary Approval, and Proposed Final Judgment and Order of Dismissal with Prejudice. ECF No. 81. On February 2, 2021, the Court entered an Order preliminarily approving the Settlement and preliminarily certifying the Settlement Class, as well as approving the form and methods for class notice, and setting a final approval hearing for May 27, 2021, at 1:30 p.m. ("Preliminary Approval Order"). ECF No. 86. Pursuant to the Preliminary Approval Order, the Claims Administrator, RG/2 Claims Administration LLC ("RG/2"), mailed the Notice by the Notice Date to records holders, as well as brokers who held shares in street name for Jaguar shareholders during the Class Period. RG/2 also posted the Notice on the settlement website at www.rg2claims.com/jaguar.html. In addition, Lead Counsel published Summary Notice via *PRNewswire*. Monteverde Decl. at ¶ 19.

## III. ARGUMENT
### A. Final Approval is Warranted Because the Settlement is Fair, Reasonable, and Adequate

This Court found that the proposed Settlement satisfied the standard for preliminary approval, and Lead Plaintiff respectfully submits that this Settlement also satisfies the standard for final approval. The Ninth Circuit has repeatedly reiterated the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23(e)") requires court approval of any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a class action. The process involves two stages: preliminary approval followed by notice to the class, and then final approval after a hearing. *See*

3

*In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 516-17 (N.D. Cal. 2020). Final approval of a settlement requires determination of whether the settlement is "fair, reasonable, and adequate." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 997 (N.D. Cal. 2015).

In order to determine whether a settlement is fair, reasonable, and adequate, courts in the Ninth Circuit generally weigh the following eight factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the reaction of the class members of the proposed settlement; and (8) the presence of a governmental participant. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (citing *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). District courts have discretion to determine which factors to apply and how to apply them. *See id*. at 946 ("The factors in a court's fairness assessment will naturally vary from case to case").

Moreover, the 2018 amendments to Rule 23(e)(2) set forth an additional four factors to weigh in determining whether a settlement is "fair, reasonable, and adequate." These four factors overlap with the Ninth Circuit factors set forth above, as well as with the factors Lead Plaintiff discussed for preliminary approval. *See* ECF No. 81 at 5-6. The factors outlined in Rule 23(e)(2) are as follows: (A) whether the class representative and class counsel have adequately represented the class; (B) whether the proposed settlement was negotiated at arm's length; (C) whether the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorneys' fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) whether the proposed settlement treats class members equitably relative to each other.

1. ***Application of the Ninth Circuit Factors Favors Final Approval of the Settlement***
   a. <u>Strength of Lead Plaintiff's Case, and Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

The first two factors favor final approval of the Settlement because while Lead Plaintiff believes the asserted claims have merit and are supported by the evidence obtained in discovery, Lead Plaintiff and the Settlement Class face significant risks in going forward with litigation.

First, although Lead Plaintiff defeated Defendants' Second Motion to Dismiss (*see* ECF No. 64), Defendants have strong defenses to Lead Plaintiff's claims. *See In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d at 999.

In the Second Amended Complaint, Lead Plaintiff alleged that the Proxy contained the following material misstatements and omissions: (i) statements and projections prepared by Defendants that reflected Equilevia as a prescription product, even though Defendants knew that it was going to be sold and marketed as a non-prescription product; (ii) the summary of Stifel's *Discounted Cash Flow Analysis* of Jaguar; and (iii) the omissions of (a) the projected unlevered free cash flows that both Jaguar and Napo were expected to generate between 2017 and 2026, (b) the unlevered free cash flow contribution margins for Jaguar and Napo from 2017-2021, and (c) the pro-forma projections for Jaguar and Napo giving effect to the Merger. *See* ECF No. 45.

Defendants have vehemently denied these claims asserted by Lead Plaintiff. Indeed, with respect to the first allegation, Defendants argue that Equilevia was an immaterial part of Jaguar's business. *See* ECF No. 47 at 3. As for the second allegation, Defendants claim that it amounts "to nothing more than a post-hoc disagreement with the substance of Stifel's analysis, not with whether that analysis was adequately disclosed." *Id*. at 2. Regarding Lead Plaintiff's third allegation, Defendants argue that omission of unlevered free cash flows, cash flow contribution margins, and pro forma projections are immaterial. *Id.* Moreover, in denying Defendants' Second Motion to Dismiss, the Court focused its analysis solely on the statements related to Equilevia, and found that in light of the fact that Lead Plaintiff "stated a claim based at least on the allegations regarding Equilevia," "there [was] no basis to parse the allegations to decide at

this juncture whether the proxy included other actionable misstatements or was misleading as the result of any material omissions." ECF No. 64 at 4. Thus, despite Lead Plaintiff's claims surviving the Second Motion to Dismiss, establishing Defendants' liability at summary judgment or trial would still be difficult.

Second, even if liability were established, the Settlement Class still faces considerable risk establishing loss causation and proving damages in an amount greater than the Settlement Amount. Although Lead Plaintiff contends that his theory of loss causation and economic loss is appropriate and that damages could range from $5.2 million to $9.9 million, Defendants have repeatedly emphasized that causally related damages cannot be established, because the damages theory must be predicated solely on the alleged Equilevia misrepresentation and any potential sales for that product.

Finally, the continued accrual of time and expenses in preparing for summary judgment and trial is a risk itself because, if litigation continued, there is a chance that the Settlement Class could obtain recovery less than the Settlement Amount, or no recovery at all. This risk is magnified by the complex nature of securities class action litigation.

Accordingly, the proposed Settlement "offers class members prompt relief without the expense and hassle of what would be protracted litigation if this case cannot be resolved amicably," so the first two factors support final approval of the Settlement. *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d at 999.

b. <u>Risk of Maintaining Class Action Status Throughout the Trial</u>

Lead Plaintiff also faces the risk of failing to maintain class action status throughout the trial, so this factor also supports final approval of the Settlement. As alluded to above, Defendants would undoubtedly challenge Lead Plaintiff's theory of loss causation and economic loss at the class certification stage. *See In re Willis Towers Watson PLC Proxy Litig.*, No. 1:17-cv-1338 (AJT/JFA), 2020 U.S. Dist. LEXIS 162810, at *21-30 (E.D. Va. Sep. 4, 2020) (analyzing defendants' loss causation challenge at class certification stage in § 14(a) action). While Lead Plaintiff believes he could overcome such a challenge, success would be far from certain.

6

      c.   Amount Offered in Settlement

The amount offered in settlement is considered the most important factor because settlements are judged based on the amount of relief obtained for the class. *Bayat v. Bank of the W.*, 2015 U.S. Dist. LEXIS 50416, at *13 (N.D. Cal. Apr. 15, 2015); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d at 1001. However, "it is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("The settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate."). Here, Lead Plaintiff estimates that damages at trial could range from $5.2 million to $9.9 million, which means the Settlement Amount represents a significant recovery of between 26% to 50% of potential damages. Therefore, the sizable $2.6 million Settlement Amount favors final approval in light of the uncertainties and risks of continuing litigation discussed above.

      d.   Extent of Discovery Completed and the Stage of the Proceedings

This factor also favors final approval of the Settlement because Lead Plaintiff has vigorously litigated this Action for the past three years, including withstanding two attempts to dismiss the Action, thorough discovery, and a mediation followed by continued settlement discussions.

Regarding discovery, Lead Plaintiff obtained discovery from Defendants that included 277,532 pages of documents containing e-mails, board materials, financial data and projections, analyst reports, and other Merger related documentation. Lead Plaintiff also produced documents to Defendants. In addition, Lead Plaintiff issued subpoenas and obtained documents from Jaguar's financial advisor, Stifel. Thereafter, Lead Plaintiff and Lead Counsel thoroughly reviewed all discovery and consulted with their damages expert. In preparation for the mediation, Lead Plaintiff submitted a comprehensive mediation statement to the mediator that contained 24 exhibits relating to the evidence obtained during discovery. Simply put, "the extent of discovery completed supports approval of [the] proposed settlement" because the "litigation has

7

'proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases.'" *Booth v. Strategic Realty Tr., Inc.*, No. 13-cv-04921-JST, 2015 U.S. Dist. LEXIS 140723, at *18 (N.D. Cal. Oct. 15, 2015) (quoting *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851-52 (N.D. Cal. 2010)).

e. <u>Experience and Views of Counsel</u>

Lead Counsel has significant experience litigating securities class actions nationwide, and has recently procured favorable settlements for shareholders in Section 14 actions.[4] And Lead Counsel believes that the favorable Settlement Amount is a great outcome for the Settlement Class in light of the significant risks of continued litigation. Therefore, this factor overwhelmingly supports final approval of the Settlement.

f. <u>Reaction of the Settlement Class Members to the Proposed Settlement</u>

To date, RG/2 has mailed 4,041 Notices as follows: (i) to 34 Settlement Class Members identified by Lead Counsel; (ii) to 411 entities on the RG/2 nominee contact file for securities cases (containing brokerage firms, banks, other third-party nominees, and third-party claims filing groups); (iii) to 806 potential Settlement Class Members; and (iv) provided 2,790 Notices in bulk for nominees to mail Notice to clients directly. To date, RG/2 has received 13 Claims (representing 848,535 shares of Jaguar common stock), with 82 Notices deemed undeliverable. Further, RG/2 has not received any requests for exclusion or any objections to the Settlement. In Lead Counsel's and RG/2's experience, most class members do not respond to the notice until closer to the response deadline. Pursuant to the Preliminary Approval Order, Lead Counsel will file a declaration providing the most up to date information on or before May 20, 2021. Moreover, there is no specific claims rate that must be achieved for a settlement to be approved. *See Bayat*, 2015 U.S. Dist. LEXIS 50416, at *20-21 (approving class action settlement with only a 2% claims rate); *Evans v. Linden Research, Inc.*, 2014 U.S. Dist. LEXIS 59432, at *4 (N.D. Cal. Apr. 29, 2014) (approving class action settlement with only a 4.3% claims rate).

---

[4] *See* Monteverde Decl. Ex. 1 (Firm Resume).

       g.  Presence of a Governmental Participant

There are no governmental participants in this Action, so this final factor is inapplicable. However, the fact that the class settlement notifications were sent to the appropriate federal and state officials pursuant to the Class Action Fairness Act, and none have objected, is further evidence of the Settlement's fairness. *See Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 543 (W.D. Wash. 2009).

***

In sum, the factors utilized in the Ninth Circuit support this Court's final approval of the proposed Settlement.

    **2. Final Approval of the Settlement is Also Supported by Application of the Four Factors Set Forth in Rule 23(e)(2)**

        a.  Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

Lead Plaintiff and Lead Counsel have more than adequately represented the Settlement Class. Lead Plaintiff has faithfully represented the Settlement Class by reviewing the various case filings, producing documents in response to Defendants' discovery requests, and communicating with Lead Counsel throughout the Litigation.[5]

Moreover, Lead Counsel invested considerable time and resources in representing Lead Plaintiff and the Settlement Class.[6] Indeed, Lead Counsel has litigated this Action over the past three years, withstanding two attempts by Defendants to dismiss the Action and engaging in extensive document discovery. After analyzing the discovery and assessing the risks of further litigation, Lead Plaintiff and Lead Counsel explored the possibility of settlement as a potential alternative. In preparation for mediation, Lead Counsel consulted with a damages expert and submitted a thorough mediation statement referencing 24 exhibits. Although the full-day mediation did not yield a settlement, Lead Counsel continued to pursue settlement discussions, resulting in negotiation of the proposed Settlement.

---

[5] *See* Monteverde Decl. Ex. 3 (Declaration of Lead Plaintiff).
[6] *See* Monteverde Decl. Ex. 2 (Billing Records).

b.  The Proposed Settlement was Negotiated at Arm's Length

As previously discussed in Lead Plaintiff's Motion for Preliminary Approval, this Settlement was the product of arm's length negotiations. ECF No. 81 at 6-8. Arm's-length negotiations typically take place over an extended period with experienced counsel on both sides, each with an understanding of the strengths and weaknesses of their own and the opposing party's positions. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

In this case, the Settlement was the culmination of over three years of litigation that included substantial document discovery and motion practice, a mediation, and then continued settlement discussions with the mediator. Indeed, Mr. Meyer has been a mediator for more than 12 years. He has served as a mediator for securities and derivative class actions nationwide, as well as for other types of complex business litigation cases. JAMS, Robert A. Meyer, Esq., https://www.jamsadr.com/meyer/ (last visited April 22, 2021). Participation of an independent mediator in settlement negotiations "virtually insures that the negotiations were conducted at arm's length. . . " *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711, at *7 (S.D. Ohio Oct. 23, 2008) (citing *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005)); s*ee also De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2019 U.S. Dist. LEXIS 204442, at *29 (N.D. Cal. Nov. 25, 2019); *Kim v. Tinder, Inc.*, No. CV 18-3093-JFW(ASx), 2019 U.S. Dist. LEXIS 108041, at *36 (C.D. Cal. June 19, 2019) (collecting cases).

In sum, the Settlement was negotiated at arm's length, and thus warrants final approval.

c.  The Relief for the Settlement Class is Excellent

The Settlement Amount is an excellent result for the Settlement Class, considering the four factors outlined by Rule 23(e)(2)(C).

The *first factor* considers whether the Settlement Amount is fair given the costs, risks, and delay of trial and appeal. As discussed above, the risks and costs of further litigation weigh in favor of final approval. *Supra* § III(A)(1)(a) - (c).

The *second factor* evaluates the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Lead Plaintiff's proposed method of distribution of the Settlement Fund and method of processing the Settlement Class Members' claims is effective. The proposed methods are laid out here, while also discussed in greater detail in the Stipulation. ECF No. 81, Stipulation, 19-22.

Authorized Claimants must submit a Proof of Claim and Release by the date specified in the Notice to RG/2. A Proof of Claim and Release is deemed to have been submitted when postmarked and mailed by first-class mail, addressed in accordance with the instructions. In all other cases, the Proof of Claim and Release will be deemed to have been submitted when actually received by RG/2. Lead Counsel also has the discretion to accept claims submitted late, so long as this does not materially delay distribution of the Net Settlement Fund. Each Proof of Claim and Release will be reviewed by RG/2. Proofs of Claim and Releases that do not meet the submission requirements can be rejected, but prior to rejection, RG/2 will contact the Claimant to attempt to remedy the curable deficiencies and notify them that they have a right for this Court to review the rejection.

RG/2 will then calculate the claims of Authorized Claimants in accordance with the Plan of Allocation. Finally, RG/2 will distribute the Settlement Fund in the following order: (1) pay all Notice and Administration Costs; (2) pay the Taxes and Tax Expenses; (3) pay Lead Counsel's Fee and Expense Award, if and to the extent awarded by the Court, and Lead Plaintiff's Service Award, if and to the extent awarded by the Court; and (4) after the Effective Date, distribute the Net Settlement Fund to Authorized Claimants based on his/her or its pro rata share of the Net Settlement Fund.

"The method proposed by the parties for processing Settlement Class Members' claims is typical for a securities fraud settlement." *Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx), 2019 U.S. Dist. LEXIS 180474, at *23 (C.D. Cal. Oct. 10, 2019) (setting forth similar procedure). And no distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00, which is the standard threshold in securities

11

class actions. *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *31 (N.D. Cal. Dec. 17, 2018).

The *third factor* is the terms of any proposed award of attorneys' fees, including timing of payment. Lead Plaintiff addresses this in his Motion for Attorneys' Fees and Expenses and Service Award.

Finally, the *fourth factor* requires identification of any agreements in connection with the proposed Settlement under Rule 23(e)(3). On December 29, 2020, the Parties entered into a Supplemental Agreement that was incorporated and disclosed in the Stipulation. *See* Stipulation at 27 (¶ 7.4). The Supplemental Agreement provides that Defendants have the option to withdraw and terminate the Settlement if the total number of Jaguar common stock purchased, or otherwise acquired by Settlement Class Members whom validly requested exclusion from the Settlement Class, exceeds a certain percentage of shares of Jaguar common stock held by the Settlement Class Members. Such agreements are common in securities class action settlements. *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 254 n.11 (11th Cir. 2009) ("The Supplemental Agreement containing the blow provision was identified to the district court in the Stipulation of Partial Settlement, meeting the requirement of Rule 23(e)(3)"); *see also* 7 Newberg on Class Actions § 22:59 (5th ed.).

    d. <u>The Proposed Settlement Treats Settlement Class Members Equitably</u>

The Settlement does not grant improper or preferential treatment to Lead Plaintiff or other segments of the Settlement Class, and treats Settlement Class Members equitably relative to each other. Under the Plan of Allocation, each Authorized Claimant that submits a valid, timely Proof of Claim will receive a pro rata distribution from the Net Settlement Fund based on the number of Jaguar shares they hold. *See* Stipulation at 8, 22-23, Notice at 11. Therefore, each eligible Jaguar shareholder will be paid out at an equivalent price per share. Notice at 5.

Furthermore, while Lead Plaintiff seeks an award of $5,000 in reasonable costs and expenses relating to his representation of the Settlement Class pursuant to 15 U.S.C. § 78u-4(a)(4), such an award would "not constitute inequitable treatment of class members." *In re*

12

*Extreme Networks, Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 121886, at *26 (N.D. Cal. July 22, 2019) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)).

    **B.    The Plan of Allocation for the Settlement Fund Warrants Approval Because it is Fair, Reasonable, and Adequate**

Lead Plaintiff also seeks approval for the Plan of Allocation of the Settlement Fund, set forth in the Notice disseminated to the Settlement Class. Stipulation, Exhibit A-1. Just like the standard for approval of a settlement, the standard for the court's approval of a plan of allocation is whether the plan is fair, reasonable, and adequate. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2007). Under this standard, it is reasonable to allocate the settlement funds to class members based on the extent of their injuries. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1045. In *Omnivision Techs.*, this Court approved a plan of allocation based on disbursement of the net settlement fund on a pro rata share basis, so each class member would receive a portion of the net settlement fund proportional to the number of shares they owned. *Id.* at 1045-46.

Here, as in *Omnivision Techs.*, the Plan of Allocation provides that each Authorized Claimant that submits a valid, timely Proof of Claim will receive distribution from the Net Settlement Fund on a pro rata basis. Stipulation at 8, 22-23, Notice at 11. Therefore, assuming 100% of the 11,598,652 shares in the Settlement Class (which excludes the shares owned by Jaguar directors and officers) submit a valid and timely Proof of Claim, the average distribution will be $0.22 per share owned (prior to payment of Court-approved fees and expenses estimated to be less than $0.07 per share plus the cost of notice and claims administration). Notice at 5, 11. The Plan of Allocation is similar to plans approved by federal courts across the country in Section 14(a) cases where a common fund was obtained. *See Campbell v. Transgenomic*, Inc., 2020 U.S. Dist. LEXIS 97063 (D. Neb. June 3, 2020); *Duncan v. Joy Global Inc. et al*, Case No. 2:16-cv-01229, Dkt. No. 77 (E.D. Wis. 2016); *In re Hot Topic, Inc. Sec. Litig.*, No. 2:13-cv-02939, Dkt. No. 86, 103 (C.D. Cal. 2015).

In sum, the Plan of Allocation is fair, reasonable, and adequate and is also supported by authority in other Section 14(a) actions, and warrants the Court's approval.

### C. Final Certification of the Proposed Settlement Class for Settlement Purposes is Appropriate

In granting final approval of the Settlement, the Court should also grant final certification of the Settlement Class for purposes of effectuating the Settlement under Rules 23(a) and (b)(3). Courts have long acknowledged the propriety of a settlement class. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). Lead Plaintiff explained why class certification is warranted in his Motion for Preliminary Approval of Settlement, and he incorporates those same points here by reference. ECF No. 81 at 11-15.

On February 2, 2021, the Court preliminarily certified the Settlement Class so that Notice could be sent to the Settlement Class Members, and found that all prerequisites for class certification under Rules 23(a) and (b)(3) had been satisfied. ECF No. 86. Since then, no material facts regarding any of the factors for class certification have changed. Accordingly, final certification of the Settlement Class is warranted. *See Mora v. Cal W. AG Servs.*, No. 1:15-cv-01490-LJO-EPG, 2019 U.S. Dist. LEXIS 80520, at *14 (E.D. Cal. May 13, 2019) (granting final class certification based on preliminary certification because there were no objections and there was no indication that preliminary certification was erroneously granted).

## IV. CONCLUSION

For the foregoing reasons, the proposed Settlement warrants this Court's final approval, and Lead Plaintiff respectfully requests that the Court enter the Final Judgment and Order of Dismissal With Prejudice.

//
//
//
//
//

Dated: April 22, 2021

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde (*admitted pro hac vice*)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email:  jmonteverde@monteverdelaw.com

*Counsel for Lead Plaintiff and Lead Counsel for the Settlement Class*

Respectfully submitted,

**MONTEVERDE & ASSOCIATES PC**

*/s/ David E. Bower*
David E. Bower (SBN 119546)
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
Email:  dbower@monteverdelaw.com

 *Counsel for Lead Plaintiff and Lead Counsel for the Settlement Class*